UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SAMUEL J. MICELI,

                          Petitioner                     DECISION AND ORDER

-vs-

                                                        04-CV-6371 CJS
UNITED STATES OF AMERICA,                       98-CR-6024

                          Respondent

_____

INTRODUCTION

      Now before the Court is the *pro se* petitioner's application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the application is denied.

28 U.S.C. § 2255

Section 2255 provides, in relevant part, as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

1

28 U.S.C. § 2255.  "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *U.S. v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation omitted).  The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that petitioner is not entitled to relief. 28 U.S.C. § 2255.  As will be seen below, petitioner's arguments and submissions do not merit an evidentiary hearing.

## BACKGROUND

The facts of this case were accurately set forth in Respondent's Response [#138] in this action, and need not be repeated in their entirety.  For purposes of the instant Decision and Order, it is sufficient to note the following facts.  Petitioner was indicted in case number 98-CR-6024 for, *inter alia*,  violating 18 U.S.C. § 152 (bankruptcy fraud), 18 U.S.C. § 1957(a) (illegal monetary transactions), and 18 U.S.C. § 1956(a)(1)(B)(i) (money laundering).  Significantly, the crimes charged in the indictment occurred in 1993 and 1994.  Petitioner's trial was scheduled to begin on March 13, 2000, however, he fled the jurisdiction.  Petitioner was captured in April 2002, when he was found living in Florida under an assumed name.  Petitioner was subsequently indicted in case number 02-CR-6040 with violating 18 U.S.C. § 3146 (bail jumping), and was also charged by way of information with violating 18 U.S.C. § 922(g)(2) (fugitive in possession of a firearm).

On May 10, 2002, petitioner and the Government entered into a Plea Agreement, in which petitioner agreed to plead guilty to the aforementioned charges. The parties agreed that petitioner's combined adjusted offense level was 29 and that his criminal history category was II, which would result in a sentencing range of 97-121 months under the United States Sentencing Guidelines ("guidelines"). However, in exchange for petitioner's agreement to plead guilty, the Government agreed not to oppose any recommendation by the Probation Department that petitioner receive a 2-level downward adjustment for acceptance of responsibility as to the bail jumping and firearms violations. The parties further agreed that, if petitioner were to receive a two-level downward for acceptance of responsibility, that his offense level would be 27, which would result in a sentencing range for a term of imprisonment of 78-97 months. Nonetheless, petitioner acknowledged that the Court would ultimately determine the appropriate offense level and criminal history category, and that he would not be entitled to withdraw his plea if the Court failed to adopt the sentencing calculations in the agreement. Petitioner also agreed that the amount of monetary loss resulting from his bankruptcy fraud and money laundering crimes was $556,144.00. (Plea Agreement ¶ 7). The Plea Agreement was executed in open court, following an extensive plea colloquy. (*See*, 46-page Transcript [#138-3]. During the colloquy, petitioner indicated that he fully understood the consequences of pleading guilty and that he was satisfied with the performance of his attorney.

Prior to sentencing, petitioner moved for a downward departure, since the Pre-

Sentence Investigation Report recommended against a downward adjustment for acceptance of responsibility. At sentencing, the Court denied the request, stating:

> Obviously, your conduct in absconding just before trial, your conduct in living and working under the name of Salvatore Cianciola – obviously your cousin's last name – . . . in Palm Bay, Florida, you did that by opening a bank account, obtaining a Florida driver's license, securing a passport under this false name; further, your conduct following your arrest in Florida of contacting a friend from jail on or about April 24th, 2002, and asking him to clean out the apartment you were living in, specifically requesting that all valuables, papers, two wallets containing identification in your real name and false name and a handgun with ammunition be removed. As you are aware, your friend notified the FBI in Florida. He located 200 rounds of ammunition in different locations in the house and garage, and your friend cooperated with the FBI and turned over all items to the FBI. That firearm, which is a Titan .25 caliber semi-automatic, was in fact possessed in the Middle District of Florida while you were a fugitive from justice.
>
> All this conduct to I think anyone who looks at it – and I certainly look at it – would appear to be obviously obstructive and without acceptance of responsibility; and therefore, the Court declines to find that you have accepted responsibility. In fact, this Court finds by a preponderance of evidence that you have not accepted responsibility.

(Sentencing Transcript 11-12).

The Court then determined that, with an offense level of 29, petitioner's sentencing range under the guidelines was 97-121 months. The Court sentenced petitioner to, *inter alia*, 97 months in prison. (*See*, Sentencing Transcript [#125]). In calculating the offense level for the bankruptcy fraud charges, the Court imposed a "14-level increase pursuant to Guideline Section 2B1.1(b)(1)(H), since the amount fraudulently discharged at bankruptcy exceeded [$]400,000." (*Id*. at 24). The Court similarly imposed a 14-level upward adjustment in calculating the offense level for the

illegal money transaction and money laundering charges, "because the loss exceeded [$]400,000." (*Id*. at 25). The Court also imposed a 4-level upward adjustment pursuant to guideline section 2K2.1(b)(5) as to the charge of possession of a firearm by a fugitive. (Id.) ("There's a four-level increase pursuant to guideline section 2K2.1(b)(5) as the firearm was possessed while committing another felony"). In imposing the 97-month sentence, the Court stated, in part:

> . . . 97 months. That is the low end of the guidelines, Mr. Miceli. And the reason you're getting that is partially because of what you told me [a few moments ago], but because of what I believe is really – as I said, the sincerity of the letter from you daughter, and I should also mention the letter from your son; and I do want to [read from his letter], because that's another thing that impressed me, If I could put my hand on it. Somewhere, despite all the wrong things you did, you did something right. Listen to this: 'Your Honor, I need my father in my life. I will not deny that I still need his guidance and love to continue to grow in a positive direction. I need him to praise me when I do well, believe in my dreams, and also to give me a good kick when I mess up.' When I read this, I've got to tell you, it sent chills up my back because this kid, although he's an adult, despite the disappointment, is man enough to realize that he still – that he has problems himself and that he can use his father's guidance.
> 
> \* \* \*
> 
> Obviously, the time you're getting is a long time; but I can only say that despite your family's opinion, it is called for by law . . . .

(Sentencing Transcript 46, 53). Significantly, for purposes of the instant application, the Court, in calculating petitioner's sentence, applied the 2001 Sentencing Guidelines, which were in effect as of the date of sentencing.

Petitioner, represented by new assigned counsel, filed a notice of appeal to the United States Court of Appeals for the Second Circuit. However, petitioner's counsel ultimately filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating

that there were no appealable issues. In the *Anders* brief, counsel briefly reviewed the sentencing calculations made by the Court, though he did not consider whether the version of the sentencing guidelines that was used to calculate the sentence was the correct one. (*See*, Pet. Reply Memo) On August 21, 2003, the Second Circuit directed petitioner's counsel to file a supplemental *Anders* brief, discussing the validity of the guilty plea and the propriety of the sentencing calculation:

> Appellant`s counsel has failed to submit a proper *Anders* brief because he did not provide a substantive discussion regarding the validity of appellant`s guilty plea or an assessment of the propriety of the sentencing calculation, including references to the sentencing transcript. *United States v. Ibrahim*, 62 F.3d 72, 74 (2d Cir. 1995) (per curiam); *United States v. Urena*, 23 F. 3d 707, 708-09 (2d Cir. 1994).

In the supplemental *Anders* brief, petitioner's counsel indicated that the plea was knowing and voluntary, and that the sentencing calculation was accurate. Again however, as to the sentencing calculation, counsel did not consider whether the version of the sentencing guidelines that the Court used was the correct one. The Second Circuit, in a summary order, dismissed the appeal and affirmed petitioner's conviction and sentence.

Petitioner, now proceeding *pro se*, commenced the subject action, alleging that both his trial counsel and appellate counsel were ineffective. Petitioner contends that trial counsel was ineffective for failing to object to the sentence calculation, in two respects. First, he states that counsel should have objected to the 14-level adjustment imposed for amount of loss under Guideline § 2B1.1(b)(1)(H), because it violated the *ex post facto* clause. More specifically, he maintains that at the time he committed

6

the bankruptcy fraud and money laundering crimes, in 1993 and 1994, this enhancement would have been calculated under guidelines § 2F1.1, and would have resulted in only a 9-level adjustment. Second, he maintains that counsel should have objected to the four-level upward adjustment under § 2K2.1(b)(5), because he never possessed a firearm in connection with "another felony." As for appellate counsel, petitioner states that such counsel "did nothing to represent him on appeal." In that regard, he notes that, at one point, his appeal was dismissed because counsel missed a filing deadline, though the Second Circuit later reinstated the appeal. Construing petitioner's papers liberally, the Court further reads petitioner's papers to allege that appellate counsel was ineffective for raising the alleged deficiencies of trial counsel discussed above.

## ANALYSIS

Claims for ineffective assistance of counsel are analyzed under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). It is well settled that

> *Strickland* 's test for ineffective assistance of counsel consists of two separate prongs, both of which must be satisfied in order to establish a constitutional violation. A defendant must show both (1) that defense counsel's performance "fell below an objective standard of reasonableness ... under prevailing professional norms" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Davis v. Greiner*, 428 F.3d 81, 87 (2d Cir. 2005) (*Citing Strickland*, 466 U.S. at 688, 694). A substantial showing must be made on both of the two *Strickland* prongs. *Id*. When assessing the objective reasonableness of counsel's conduct under the first

7

prong of the *Strickland* test, the court must "consider the circumstances counsel faced at the time of the relevant conduct and to evaluate the conduct from counsel's point of view," and must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 88.  With regard to the second prong of the *Strickland* test,

> [t]he burden is on the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  The level of prejudice [a petitioner] need demonstrate lies between prejudice that had some conceivable effect and prejudice that more likely than not altered the outcome in the case.

*Id*. at 90-91.  Specifically, when considering the issue of prejudice in a case such as this, involving a sentencing issue, the "question is whether, but for the [alleged] lapse [by counsel], there is a reasonable probability the sentence would have been the same." *Sapia v. United States*, 433 F.3d 212, 218 (2d Cir. 2005) (citation omitted).

Applying these legal principles, the Court finds that petitioner's application must fail because he cannot demonstrate prejudice.  First, petitioner alleges that his counsel was ineffective for failing to object to the Court's application of guideline § 2K2.1(b)(5) at sentencing.  He contends that it was improper for the Court to impose a four-level adjustment under Guideline § 2K2.1(b)(5), because, while he possessed a firearm, he did not possess it "in connection with another felony offense."  As to this issue, petitioner states that he "never committed 'another felony' while possessing a firearm.  In fact, petitioner violated § 922(g)(2) when he failed to appear for court, becoming a fugitive from justice which became his offense of conviction under §

922(g)(2)." (Pet. Memo of Law p. 6).  Liberally construing the pro se petitioner's papers, the Court understands him to argue that the Court "double counted" when it imposed the four-level sentencing enhancement, since his status as a fugitive was already an element of the base offense under § 922(g).  There is strong support for this argument, since it was adopted by the Third Circuit, albeit in an unpublished decision, *U.S. v. Pritchett*, 29 Fed.Appx. 865, 866-867, 2002 WL 393029 at *1 (3rd Cir. 2002), wherein the court stated:

> Appellant contends that the District Court's interpretation of § 2K2.1(b)(5) "double counts" his fugitive status in computing his sentence because that status was an essential element of his offense of conviction. In addition, appellant claims that this interpretation contravenes the structure of § 2K2.1 and 18 U.S.C. § 922(g), as well as an application note to the Guidelines. U.S.S.G. § 2K2.1, cmt. n. 18. We agree.
>
> As appellant notes, his status as a fugitive was, as it had to be, considered in calculating the base offense level for his sentence. Section 2K2.1(b)(5) then permits a four level enhancement for using or possessing a firearm in connection with "another felony offense." Within this framework, "another felony offense" means a felony other than the one the sentencing court considered in calculating the base offense level. Simply put, enhancing appellant's sentence for being a fugitive with a gun because he is a fugitive double counts his fugitive status when the Guidelines require "another," i.e., a different, felony in order to enhance. In reaching this conclusion, we are persuaded by and adopt the analysis of the Seventh and Sixth Circuit Courts of Appeals. *United States v. Szakacs*, 212 F.3d 344, 348-52 (7th Cir.2000); *United States v. Sanders*, 162 F.3d 396, 399-401 (6th Cir.1998).
>
> * * *
>
> [A]ugmenting appellant's sentence pursuant to § 2K2.1(b)(5) punished appellant again for the same conduct that was considered in calculating his base offense level and improperly interpreted § 2K2.1(b)(5) as triggering enhancements depending on the degree of a defendant's culpability, when the provision only permits enhancement for "other" felonious conduct.

9

*Id*. at *1-2; *see also, U.S. v. Szakacs*, 212 F.3d 344, 350 (7th Cir. 2000) ("[T]he Guidelines differentiate between base-offense levels and specific-offense characteristics, and courts should not adjust a sentence upward based on factors already reflected in the base-offense level."). However, even assuming, *arguendo*, that this Court adopted the Third Circuit's reasoning, petitioner's sentencing range would not change. In other words, if the Court had not imposed a four-level adjustment under Guideline § 2K2.1(b)(5), the adjusted offense level for the § 922(g) charge would have been 19 instead of 23, while the adjusted offense levels for the bankruptcy fraud charges (Counts 1-6), Money Laundering Charges (Counts 7-18), and Bail Jumping Charges would have remained 26, 26, and 17, respectively. Under Guideline § 3D1.4, those levels would have resulted in a three-level increase, for a combined offense level of 29[1], which is the same combined offense level that the Court actually used at sentencing. Consequently, petitioner suffered no prejudice.

Petitioner next contends that his attorneys were ineffective for failing to challenge his sentence on ex post facto grounds. Specifically, petitioner claims that the Court violated the ex post facto clause when it calculated his sentence using the 2001 guidelines that were in effect at the time of his sentencing, rather than the 1992 guidelines in effect at the time that he committed the bankruptcy fraud and money laundering crimes. That is, as indicated previously, petitioner maintains that, under the

---

[1] Applying the table at Guideline § 3D1.4 produced 2½ units, resulting in a three-level increase, which when added to 26, totals 29.

earlier guidelines, the adjustments for the amount of financial loss should have been made under guideline § 2F1.1(b)(1)(J), instead of 2B1.1(b)(1)(H), which would have resulted in a shorter sentence.

In order to analyze this contention, the Court re-calculated petitioner's sentence under the 1992 guidelines. In that regard, the law is well settled:

> The Sentencing Guidelines explicitly mandate that a court use the version of the Guidelines in effect on the date of the defendant's sentencing. *See* U.S.S.G. § 1B1.11(a) (2002)[.] The exception to this rule arises when the version of the Guidelines in effect at the time of sentencing is more "severe," than the version in effect when the offense was committed. In such cases, there is an ex post facto problem and the earlier Guidelines should be applied.

*U.S. v. Keigue*, 318 F.3d 437, 442 (2nd Cir. 2003) (citations and internal quotation marks omitted). At the outset, though, the Court notes that petitioner is incorrect in stating that the calculation should have been made under 2F1.1(b)(1)(J), and consequently would have resulted in a nine-level increase. That is because subsection (J) applies to losses exceeding $350,000. but less than $500,000. However, the loss in this case exceeded $500,000. Specifically, in the plea agreement plaintiff agreed that the amount of restitution owed was $566,144.00. (Plea Agreement ¶ 7). Therefore, even assuming that the 1992 manual should have been used, the calculation would have been made under 2F1.1(b)(1)(K), which would have resulted in a ten-level increase.

Turning to the actual calculation under the 1992 guidelines, and beginning with the bankruptcy fraud charges, petitioner's base offense level would have been 6. As

mentioned above, the Court would then apply a ten-level increase under § 2F1.1(b)(1)(K). Petitioner would also receive a two-level increase under § 2F1.1(b)(2)(A) based upon the number of victims involved, as well as a two-level increase for obstruction of justice under § 3C1.1. The adjusted offense level for the bankruptcy fraud crimes would therefore be 20. Turning to the illegal monetary transaction/money laundering crimes, petitioner's base offense level would be 20. The Court would then apply a three-level increase under § 2S1.1(b)(2)(D), since the funds involved exceeded $350,000. The Court would also apply a two-level increase for obstruction of justice under § 3C1.1. Accordingly, the adjusted offense level would be 25. As for the crimes of bail jumping and possession of a firearm by a fugitive, the calculations under the 1992 guidelines would not change, except that, as to the latter charge, the Court will, for purposes of this Decision and Order, omit the four-level adjustment under § 2K2.1(b)(5) for the reasons discussed above.[2] Accordingly, the adjusted offense levels for the bail jumping and possession of a firearm by a fugitive crimes would be 17 and 19, respectively. The Court would then calculate the multiple-count adjustment under § 3D1.4, which would result in three levels being added to the highest offense level, for a total offense level of 28.

With a total offense level of 28 and a criminal history level of II, petitioner's sentencing range under the 1992 guidelines would have been 87-108 months. The

---

[2] In any event, the calculation under the 1992 Guideline would be the same even if the Court applied the four-level increase.

sentence of 97 months that petitioner actually received falls well within this range. In a case such as this, the Second Circuit has stated:

> For a prejudice inquiry in a case such as this, the question is whether, but for the lapse, there is a reasonable probability the sentence would have been the same. At least under the mandatory-Guidelines regime, prejudice would plainly exist where any error results in a sentence above the otherwise-proper Guidelines range. . . . The inquiry is more difficult where, as in this case, the sentence imposed would fall within the appropriate Guidelines range even without any error.
>
> In this latter kind of situation, we have inquired into whether the sentence was based particularly on its relative position in the (incorrect) Guidelines range, or whether the record indicates that the same sentence would have been imposed even if a lower range were applicable. *See United States v. Bermingham*, 855 F.2d 925, 935 (2d Cir.1988).

*Sapia v. U.S.*, 433 F.3d at 218 (citations omitted). Thus, the Court finds that petitioner suffered no prejudice, since this Court would have imposed the same sentence under the earlier guidelines. In that regard, while the Court noted, at sentencing, that a sentence of 97 months fell at the low end of the guideline range, the Court was not indicating that it would have imposed a shorter sentence had the guideline range been lower. Rather, the Court believed, and continues to believe, that the 97-month term of imprisonment was appropriate given all of the facts and circumstances of this case. Consequently, the Court finds that petitioner suffered no prejudice as a result of the alleged ineffectiveness of his counsel, and his application must therefore be denied.

CONCLUSION

Petitioner's application is denied, and this action is dismissed. Pursuant to 28

U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.

So Ordered.

Dated:		Rochester, New York
		January 3, 2007

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge